IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARMEN TALAVERA, )
 )
        Plaintiff, )
 )
v. ) Case No. 09-2572-JWL
 )
SOUTHWEST MEDICAL CENTER, *et al.*, )
 )
        Defendants. )

**ORDER**

This matter comes before the Court upon Defendant Southwest Medical Center's Motion to Allow *Ex Parte* Communications with Plaintiff's Treating Health Care Providers (Doc. 55), filed May 3, 2010. The motion is fully briefed, and the Court is prepared to rule. For the reasons stated below, this Court grants, in part, Defendant's motion.

**I.     Background**

In her complaint, Plaintiff alleges Defendants negligently failed to diagnose and treat a stroke while Plaintiff was receiving medical care and nursing at Defendant Southwest Medical Center ("Defendant" or "SWMC") from November 9, 2007 to November 16, 2007.[1] As a result, Plaintiff asserts she is totally physically disabled, paralyzed on her left side, and requires around the clock care.[2]

Defendant moves for an order allowing it to communicate *ex parte* with Plaintiff's treating health care providers. Plaintiff argues such an order violates the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the physician-patient privilege, and

---

[1] Compl. (Doc. 1) ¶¶ 23, 63–65.

[2] *Id*. ¶ 62.

public policy. She also contends a court order authorizing a blanket disclosure of her health information would violate HIPAA and seeks a protective order pursuant to Fed. R. Civ. P. 26(c) barring Defendant from communicating *ex parte* with her treating physicians.

## II. Analysis

### A. Health Insurance Portability and Accountability Act of 1996

The parties agree that regulations promulgated pursuant to HIPAA apply to Defendant's request to conduct *ex parte* interviews with Plaintiff's health care providers but disagree how those regulations are interpreted. Plaintiff argues HIPAA prohibits *ex parte* communications whereas Defendant contends HIPAA contains no such prohibition.[3]

HIPAA prohibits the misuse or unauthorized disclosure of protected health information, including the verbal disclosure by a covered health care provider.[4] HIPAA, however, does not prohibit all disclosures; rather, it imposes procedures on health care providers concerning the disclosure of medical information.[5] In the District of Kansas, it is well settled that HIPAA does not prohibit *ex parte* interviews with treating physicians, so long as certain procedural guidelines are met.[6]

---

[3] The parties also agree that HIPAA preempts state law. *See* CFR § 164.512(e). The Court, however, does not need to address this argument because, as will be explained further, the Court finds Defendant has complied with the HIPAA regulations by filing the present motion seeking a court order allowing *ex parte* contact with Plaintiff's treating physicians.

[4] *Pratt v. Petelin*, No. 09-2252-CM-GLR, 2010 WL 446474, at *8 (D. Kan. Feb. 4, 2010).

[5] *Harris v. Whittington*, No. 06-1179-WEB, 2007 WL 164031, at *2 (D. Kan. Jan. 19, 2007).

[6] *See Pratt*, 2010 WL 446474, at *7–*8 (holding that HIPAA does not prohibit *ex parte* interviews if the party seeking the interview complies with the procedures for securing medical information); *Sample v. Zancanelli Mgmt. Corp.*, No. 07-2021-JPO, 2008 WL 508726, at *2 (D. Kan. Feb. 21, 2008) (noting that the District of Kansas has consistently allowed *ex parte*

In judicial proceedings, the HIPAA regulations set forth at 45 C.F.R. § 164.512(e) provide for the disclosure of medical information under the following circumstances:

> (1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
>
> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
>
>> (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
>>
>> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.[7]

The regulations plainly provide two separate and alternative methods for obtaining protected health information without violating HIPAA: (1) by court order under section 164.512(e)(1)(i) authorizing such disclosure or, alternatively, (2) by a formal discovery request,

---

interviews of treating physicians before and after HIPAA's enactment and holding that such contacts are not prohibited by HIPAA); *Harris*, 2007 WL 164031, at *2–*3 (holding that HIPAA does not prohibit *ex parte* interviews as long as its procedural safeguards are complied with by the party seeking the interview).

[7] 45 C.F.R. § 164.512(e); *see also Harris*, 2007 WL 164031, at *2.

such as a subpoena, when accompanied by certain required assurances and notices.[8]

Here, Defendant has elected to proceed pursuant to section 164.512(e)(1)(i) and requests a court order authorizing the disclosure of medical information. By seeking a court order pursuant to section 164.512(e)(1)(i), Defendant has complied with HIPAA's procedural requirements.[9] No further notice or assurances are required.[10]

Plaintiff relies on a District of Maryland case, *Law v. Zuckerman*, to support her contention that HIPAA prohibits defense counsel from contacting Plaintiff's treating physicians outside the confines of discovery, without notice or affording Plaintiff the opportunity to object.[11] In *Law*, the court held that *ex parte* communications with a treating physician must be conducted in accordance with the procedures set forth in HIPAA, but also acknowledged that one such method is to obtain a court order and did not indicate any further notice to a plaintiff is required.[12] In short, Plaintiff cites no persuasive authority that HIPAA prohibits *ex parte* communications with a health care provider.

---

[8] *See Harris*, 2007 WL 164031, at *3.

[9] *Id.* (holding that defendant complied with HIPAA by seeking a court order pursuant to section 164.512(e)(1)(i)); *Sample*, 2008 WL 508726, at *2 (holding that defendant complied with HIPAA by seeking a court order allowing plaintiff's treating physicians to disclose her health information); *Hulse v. Suburban Mobile Home Supply Co.*, No. 06-1168-WEB, 2006 WL 2927519, at *2 (D. Kan. Oct. 12, 2006) (holding that defendants complied with HIPAA regulations by filing a motion seeking a court order allowing *ex parte* contact with the treating physicians).

[10] *See Sample*, 2008 WL 508726, at *2 (stating that when defendant obtained a court order pursuant to section 164.512(e)(1)(i), it was not required to give plaintiff further notice of the interviews).

[11] *See Law v. Zuckerman*, 307 F. Supp. 2d 705, 711 (D. Md. 2004).

[12] *Id.*

B.   **Physician-Patient Privilege**

Plaintiff also argues allowing *ex parte* interviews with her treating physicians violates her physician-patient privilege.

Fed. R. Evid. 501 states, "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." This is a diversity action in which Kansas state law supplies the rule of decision. Thus, Kansas law determines the applicability of any physician-patient privilege.[13]

The physician-patient privilege in Kansas is created by statute and does not exist at common law.[14] The physician-patient privilege is codified in K.S.A. § 60-427 and includes several exceptions. Specifically, K.S.A. § 60-427(d) provides that "[t]here is no privilege . . . in an action in which the condition of the patient is an element or factor of the claim or defense of the patient." In this case, Plaintiff claims she suffered personal injury as a result of Defendant's purported medical negligence. Because Plaintiff's medical condition is in issue, the patient-physician privilege does not apply.[15]

Plaintiff concedes she *partially* waived the physician-patient privilege by filing this action, but contends it was not a total waiver. She acknowledges Defendant may properly obtain copies of her medical records, but argues that the filing of a personal injury action does not

---

[13] *See Bryant v. Hilst*, 136 F.R.D. 487, 491 (D. Kan. 1991) (in diversity action, applying Kansas law regarding privileges).

[14] *Id.*; *Werner v. Kliewer*, 710 P.2d 1250, 1254 (Kan. 1985).

[15] *See Bryant*, 136 F.R.D. at 489, 491 (D. Kan. 1991) (holding there was no physician-patient privilege under Kansas law in personal injury action).

5

operate as a complete waiver of the physician-patient privilege which would entitle defense counsel to conduct *ex parte* interviews of Plaintiff's treating physicians. In support of this contention, Plaintiff relies on *Simpson v. Bridgestone/Firestone, Inc.*, an unpublished case.[16] In that case, the court purportedly overruled a motion to compel the plaintiff to sign unlimited medical authorizations that allowed *ex parte* communications with his treating physicians. Plaintiff quotes language from *Simpson's* opinion that the waiver of the physician-patient privilege is not absolute or unlimited.

Plaintiff, however, provides no case citation, and this case does not appear to be available via Lexis or Westlaw. Further, it is not available via PACER nor has Plaintiff attached a copy of the case. D. Kan. R 7.6(c) provides that any unpublished case that is unavailable by electronic database must be attached as an exhibit to the brief or memorandum citing it. Because Plaintiff did not comply with D. Kan. R. 7.6(c), the Court declines to consider *Simpson v. Bridgestone/Firestone, Inc.*[17]

Additionally, *Simpson* does not appear to have been followed in subsequent decisions in the District of Kansas.[18] For example, in *Lake v. Steeves*, the court declined to follow *Simpson's* partial waiver approach and allowed defendant to conduct *ex parte* interviews of plaintiff's treating physicians.[19] In that case, the court concluded:

---

[16] *Simpson v. Bridgestone/Firestone, Inc.*, No. 93-2082-JWL (D. Kan. Oct. 21, 1993).

[17] *See Stephens v. City of Topeka*, 33 F. Supp. 2d 947, 955 (D. Kan. 1999) (declining to consider unpublished decision not attached to citing party's brief).

[18] *See, e.g.*, *Lake v. Steeves*, 161 F.R.D. 441, 442 (D. Kan. 1994); *Watson v. Olathe Med. Ctr.*, No. 01-2382-CM, 2002 WL 73395, at *1–*2 (D. Kan. Jan 8, 2002).

[19] *Lake*, 161 F.R.D. at 442.

> As the Kansas Supreme Court clearly stated in the case of *State v. Campbell*, 210 Kan. 265, 281, 500 P.2d 21 (1972), "[T]here is *no* privilege under [K.S.A. § 60-427(d)] in an action in which the condition of the patient is an element or factor of the claim or defense of the patient" (emphasis added). Both the statutory language and the language of the Kansas Supreme Court is without qualification. "The issue is not waiver or partial waiver, there is simply no privilege available to the plaintiff." *Bryant*, 136 F.R.D. at 491.[20]

As a result, decisions in the District of Kansas applying Kansas law do not recognize a physician-patient privilege when a medical condition is an element of a claim or defense, and have consistently permitted *ex parte* interviews of treating physicians or health care providers in such circumstances.[21]

The District of Kansas has tempered this approach by recognizing that even where no physician-patient privilege exists, a court is still free to restrict disclosure through the exclusion of any irrelevant, sensitive medical history.[22] However, such restrictions require a specific showing of need and are not warranted by a general argument that *ex parte* communications clash with public policy considerations.[23] Here, Plaintiff makes no showing that any of her medical information is particularly sensitive or irrelevant.

### C. Public Policy

---

[20] *Id.*

[21] *See id.*; *Sample v. Zancanelli Mgmt. Corp.*, No. 07-2021-JPO, 2008 WL 508726, at *1–*3 (D. Kan. Feb. 21, 2008) (holding there was no physician-patient privilege because plaintiff put her medical condition in issue and allowing *ex parte* interviews of plaintiff's treating physicians); *Hulse v. Suburban Mobile Home Supply Co.*, No. 06-1168-WEB, 2006 WL 2927519, at *1 (D. Kan. Oct. 12, 2006) (same); *McCloud v. Bd. of Dirs. of Geary Cmty. Hosp.*, No. 06-1002-MLB, 2006 WL 2375614, at *1–*2 (D. Kan. Aug. 16, 2006) (same).

[22] *Pratt v. Petelin*, No. 09-2252-CM-GLR, 2010 WL 446474, at *7 (D. Kan. Feb. 4, 2010).

[23] *Id.*

As noted above, it is well settled in the District of Kansas that *ex parte* interviews with treating physicians are authorized when the plaintiff has put his or her medical condition at issue.[24] Plaintiff argues that public policy supports the opposite conclusion; that the sanctity of the physician-patient relationship, and specifically its fiduciary nature, does not support *ex parte* interviews. Plaintiff cites various cases from other jurisdictions to support this argument, but none of these cases are binding on this Court, and at least one of them, *State ex rel. Proctor v. Messina*, has been explicitly rejected by the District of Kansas.[25] Contrary to Plaintiff's argument, decisions within the District of Kansas have held that public policy supports *ex parte* interviews when a plaintiff's medical condition is in issue.[26]

For example, in *Bryant v. Hilst*, the Court addressed various public policy arguments and

---

[24] *See id*. at *7–*8 (commenting that District of Kansas precedent allows *ex parte* interviews of treating physicians when a plaintiff's medical condition is at issue and rejecting general public policy arguments); *Sample*, 2008 WL 508726, at *2 (noting consistent support for allowing *ex parte* interviews of treating physicians before and after HIPAA's enactment and rejecting public policy arguments); *Bustamante v. Cent. Kan. Med. Ctr.*, No. 06-1336-WEB, 2007 U.S. Dist. LEXIS 32399, at *4 (D. Kan. May 1, 2007) (entering order permitting *ex parte* communications with all of plaintiff's health care providers); *Harris v. Whittington*, No. 06-1179-WEB, 2007 WL 164031, at *1 (D. Kan. Jan. 19, 2007) ("The right to conduct ex parte interviews of treating physicians who are merely fact witnesses is well settled in the District of Kansas."); *Bohannon v. Baker*, No. 06-1033-MLB, 2006 WL 2927521, at *2 (D. Kan. Oct. 12, 2006) ("Judges in this District consistently-and recently-have held that *ex parte* communications with treating physicians are permissible in cases. . . in which the medical condition of the plaintiff is an issue."); *Hulse*, 2006 WL 2927519, at *1 (permitting *ex parte* communications with plaintiff's treating physicians when her medical condition was an issue and citing the "well-reasoned line of decisions from this District" supporting such contacts); *McCloud*, 2006 WL 2375614, at *2 (permitting *ex parte* communications with plaintiff's treating physicians when her medical condition was an issue); *Lake v. Steeves*, 161 F.R.D. 441, 442 (D. Kan. 1994) ("This court continues to follow the practice of allowing ex parte interviews of treating physicians who are not listed as expert witnesses."); *Bryant v. Hilst*, 136 F.R.D. 487, 489 (D. Kan. 1991) (affirming order allowing *ex parte* interviews).

[25] *See Pratt*, 2010 WL 446474, at *8.

[26] *See, e.g.*, *Sample*, 2008 WL 508726, at *1; *Bryant*, 136 F.R.D. at 491–92.

8

determined that a court does not need to balance a plaintiff's privacy rights against a defendant's need for relevant information.[27] Even if such balancing were required, the Court found that plaintiff's privacy rights were outweighed because plaintiff had put his own medical condition at issue.[28] As the court in *Bryant* stated,

> If the court were to grant plaintiff's request, plaintiff's counsel would have unrestricted access to these witnesses, but *by the court's order* defendant's counsel would not be allowed to interview these witnesses simply because they were treating physicians, although they are witnesses with nonduplicable information concerning major areas of the action, the plaintiff's medical condition, disabilities, damages and causation. Defendant's counsel would be limited to taking the deposition of any treating physician or foregoing the knowledge of evidence which might be material to the case. Defendant's counsel would always be required to expend the funds necessary to take a deposition in order to determine whether treating physicians are in possession of any facts material to the action. As a result, the costs to defendant would be materially increased to obtain the same facts available to plaintiff without deposition costs. Plaintiff would have regular access on multiple occasions to each witness, while defendant would be limited to a single "on the record" inquiry. There is no such similar circumstance with respect to other fact witnesses. One party generally may not limit the access of the other party to fact witnesses. The court believes that both parties should have unfettered access to fact witnesses and that informal discovery from these witnesses should be encouraged.[29]

Moreover, the court in *Bryant* recognized that allowing *ex parte* interviews reduces the cost of litigation by allowing informal, less expensive discovery methods and serves the purpose of Fed. R. Civ. P. 1, which states that the Rules of Civil Procedure should be construed to secure

---

[27] *Bryant*, 136 F.R.D. at 491.

[28] *Id*.

[29] *Id.* at 491–92.

9

the "just, speedy, and inexpensive determination of every action and proceeding."[30]

In this case, Plaintiff alleges she sustained various injuries from Defendant's purported negligence in diagnosing and treating a stroke. Therefore, Plaintiff's medical condition is at issue in this case. The Court finds no reason to depart from this District's well established precedent allowing *ex parte* interviews when a plaintiff's medical condition is at issue.

### D. Scope of Order

Plaintiff argues that "[a] blanket order allowing defense counsel to conduct *ex parte* interviews of plaintiff's treating physicians would effectively circumvent the HIPAA Privacy Rule and is unauthorized by HIPAA."[31] Plaintiff, however, does not cite any authority for this statement. The Court recognizes that 45 C.F.R. § 164.512(e) allows a covered entity to disclose *only* the protected health information expressly authorized by such order and that any order should be limited to information that is relevant pursuant to Fed. R. Civ. P. 26. Orders issued in cases within the District of Kansas, however, frequently authorize a broad inquiry into a plaintiff's medical history when his or her medical condition is in issue.[32] Plaintiff makes no

---

[30] *Id.* at 492.

[31] Doc. 63 at 7.

[32] *Bustamante v. Cent. Kan. Med. Ctr.*, No. 06-1336-WEB, 2007 U.S. Dist. LEXIS 32399, at *3–*5 (D. Kan. May 1, 2007) (authorizing all health care providers to produce for inspection and copying *all* health care information concerning any care or treatment provided to plaintiff and authorizing all health care providers to speak with defense counsel about such matters outside the presence of plaintiff); *Pratt*, 2010 WL 446474, at *4 (refusing to limit disclosure to only thyroid-related conditions for which the allegedly negligent treatment had been provided and authorizing defendant to obtain discovery of all medical records relevant to plaintiff's overall physical, mental, and emotional well being); *see also* Order for Permitting Disclosure and Production of Health Records and Permitting Ex Parte Interviews with Treating Physicians, *Harris v. Whittington*, No. 06-1179-WEB (D. Kan. Feb. 15, 2007) (Doc. 27); Order for Inspection and Reproduction of Medical and/or Mental Health Records, *Hulse v. Suburban Mobile Home Supply Co.*, No. 06-1168-WEB, (D. Kan. Oct. 12, 2006) (Doc. 26).

showing that any particular medical information is irrelevant or should not be disclosed.

Disclosure of health information, of course, must be in compliance with other applicable state and federal laws.[33] For example, any order authorizing the disclosure of health information related to treatment for alcoholic, drug dependency, and mental conditions must comply with 42 U.S.C. § 290dd-2, 42 C.F.R., Part 2, and K.S.A. § 65-5602.[34]

K.S.A. § 65-5602(a) states that a patient of a treatment facility has a privilege to prevent treatment personnel from disclosing whether a patient has received treatment or any other "confidential communications made for the purposes of diagnosis or treatment of a mental, alcoholic, drug dependency and emotional condition."[35] Disclosure of that information must be made under one of the exceptions provided in K.S.A. § 60-5603(a).[36] K.S.A. § 60-5603(a)(3) creates an exception for "any proceeding in which the patient relies upon any of the aforementioned conditions as an element of the patient's claim or defense . . ." Here, Plaintiff alleges she has suffered emotional distress and mental anguish as a result of Defendant's purported negligence. Accordingly, the Court will include language in its order allowing disclosure of information regarding any diagnosis and treatment of any mental, alcoholic, drug

---

[33] *See Pratt*, 2010 WL 446474, at *5; *McCloud v. Bd. of Dirs. of Geary Cmty. Hosp.*, No. 06-1002-MLB, 2006 WL 2375614, at *3–*5 (D. Kan. Aug. 16, 2006); *Bohannon v. Baker*, No. 06-1033-MLB, 2006 WL 2927521, at *2 (D. Kan. Oct. 12, 2006); *Hulse*, 2006 WL 2927519, at *3.

[34] *See id.*

[35] K.S.A. § 65-5602(a).

[36] K.S.A. § 65-5603(a).

dependency, or emotional condition pursuant to K.S.A. § 65-5603(a)(3).[37]

Disclosure of mental, emotional, alcohol, and drug health information for treatment "conducted, regulated, or directly or indirectly assisted by any department or agency of the United States" must also conform with 42 U.S.C. § 290dd-2 and 42 C.F.R., Part 2.[38] The regulations found in 42 C.F.R., Part 2 are not HIPAA regulations, but were enacted pursuant to the provisions of the Drug Abuse Prevention, Treatment, and Rehabilitation Act, 21 U.S.C. § 1175, and were later transferred into the Public Health Service Act, 42 U.S.C. § 290dd-2.[39]

Under 42 U.S.C. § 290dd-2, records of the identity, diagnosis, prognosis or treatment of any patient which are maintained in connection with any program relating to substance abuse education, prevention, training, treatment, rehabilitation or research, which are conducted, regulated, or directly or indirectly assisted by any department or agency of the United States, shall be confidential, and shall be disclosed only as provided in the statute and implementing regulations.[40]

One method for obtaining these records is to obtain authorization by a court order upon a showing of good cause, which is determined by "weigh[ing] the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the

---

[37] *See Pratt*, 2010 WL 446474, at *6 (applying exception pursuant to K.S.A. § 65-5603(a)(3) because plaintiff made her mental and emotional condition an issue).

[38] *Id.* at *5.

[39] *McCloud v. Bd. of Dirs. of Geary Cmty. Hosp.*, No. 06-1002-MLB, 2006 WL 2375614, at *3 (D. Kan. Aug. 16, 2006).

[40] *Id.*; 42 U.S.C. § 290dd-2.

treatment services."[41] Courts have found a strong presumption against disclosure under 42 U.S.C. § 290dd-2, and the privilege afforded thereunder "should not be abrogated lightly."[42]

The Court cannot conclude based on the present record that the motion in this case would satisfy the statutory and regulatory requirements for production of information regarding diagnosis and treatment of alcoholism or drug dependency pursuant to 42 U.S.C. § 290dd and 42 C.F.R., Part 2. Accordingly, the Court's order will include the following language:

> This Order does not provide for the production of any medical records maintained in connection with any program relating to substance abuse education, prevention, training, treatment, rehabilitation or research, which are conducted, regulated, or directly or indirectly assisted by any department or agency of the United States, and which are covered by the provisions of 42 U.S.C. § 290dd-2 and 42 C.F.R., Part 2.[43]

K.S.A. § 65-6001 regulates the disclosure of HIV/AIDS health information.[44] For disclosure in a civil action, one of the exceptions in K.S.A. § 65-6002(d) must apply.[45] Defendant has not demonstrated any exception exists. Therefore, the Court will not include any language authorizing disclosure of protected information under K.S.A. § 65-6001.

Any order must also advise treating physicians of their right to refuse to be interviewed.[46] Therefore, the Court will include the following language in its order: "Although this Order

---

[41] 42 U.S.C. § 290dd-2(b)(2)(C).

[42] *McCloud*, 2006 WL 2375614, at *4.

[43] *Id.* at *5.

[44] *Pratt*, 2010 WL 446474, at *5; K.S.A. § 65-6001.

[45] *Id.* § 65-6002(d).

[46] *Harris v. Whittington*, No. 06-1179-WEB, 2007 WL 164031, at *3 (D. Kan. Jan. 19, 2007).

*authorizes and permits* all health care providers of [name of Plaintiff] to grant informal interviews, the Order does not *require* a health care provider to meet or speak with any attorney in this proceeding. Rather, a physician or other health care provider has a right to decline an attorney's request to speak or meet."[47]

The Court will also include a qualified protective order stating that Plaintiff's health information may not be disclosed beyond the present litigation or to any third parties outside the present litigation, and that all records regarding Plaintiff's health information will be returned or destroyed at the termination of the present litigation.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant Southwest Medical Center's Motion to Allow *Ex Parte* Communications with Plaintiff's Treating Health Care Providers (Doc. 55) is hereby granted in part and denied in part. The Court will enter a modified version of the Order for Inspection and Reproduction submitted by Defendant.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Protective Order prohibiting Defendant from interviewing Plaintiff's treating physicians *ex parte* is hereby denied.

**IT IS SO ORDERED**.

Dated this 30th day of June, 2010, at Topeka, Kansas.

s/ K. Gary Sebelius  
K. Gary Sebelius  
U.S. Magistrate Judge

---

[47] *Bohannon v. Baker*, No. 06-1033-MLB, 2006 WL 2927521, at *2 (D. Kan. Oct. 12, 2006).